# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SUNSHINE VAN BAEL** | **CIVIL ACTION** |
| **VERSUS** | **No. 18-6873** |
| **UNITED HEALTHCARE SERVICES, INC.** | **SECTION I** |

## ORDER & REASONS

Before the Court are cross motions for summary judgment[1] filed by plaintiff Sunshine Van Bael ("Van Bael") and defendant United Healthcare Services, Inc. ("United Healthcare"). For the following reasons, Van Bael's motion for summary judgment is denied, United Healthcare's motion for summary judgment is also denied, and Van Bael's benefit claims are remanded for further administrative review in accordance with this order.

## I.

This action arises out of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Van Bael is an assistant professor at Tulane University ("Tulane").[2] As a Tulane employee, Van Bael is insured by an employee welfare benefit healthcare plan (the "Plan") sponsored and administered by Tulane.[3] United Healthcare is the Plan's claims administrator; it "handle[s] the day-to-day administration of the Plan's coverage as directed by [Tulane]."[4]

---

[1] R. Doc. Nos. 50, 51.
[2] R. Doc. No. 1, at 2; *see also* R. Doc. No. 50-2, at 1.
[3] R. Doc. No. 51-1, at 2; R. Doc. No. 50-1, at 2.
[4] R. Doc. No. 50-8, at 161 (United 00161).

According to Van Bael, she has been treated for occipital neuralgia, which she describes as a headache disorder, since 2015.[5] The present action arises out of three claims denials. Van Bael alleges that United Healthcare wrongfully denied her coverage for two procedures intended to treat her occipital neuralgia, occipital nerve blocks and Iovera cryoneurolysis, as well as a prescription for a medication called Gralise—all in violation of ERISA.[6] Van Bael and United Healthcare both move for summary judgment.

Van Bael argues that she is entitled to summary judgment because United Healthcare failed to establish and maintain reasonable claims procedures and that its denial of coverage for the foregoing claims was arbitrary and capricious. On the other hand, United Healthcare argues that Van Bael's claims fail as a matter of law, because she failed to exhaust her administrative remedies and it did not abuse its discretion.

## II.

"Standard summary judgment rules control in ERISA cases." *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 225 (5th Cir. 2004). Hence, summary judgment is proper when the Court determines that there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate

---

[5] R. Doc. No. 50-1, at 2; R. Doc. No. 1, at 4.
[6] R. Doc. No. 50-1, at 2.

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).

Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in

[the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

"[A] denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the ERISA plan vests the administrator or fiduciary with discretionary authority to determine eligibility for a plan's benefits or to interpret the plan's provisions, however, a denial of benefits is reviewed for an abuse of discretion. *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 269 (5th Cir. 2004). The Plan grants both Tulane and United Healthcare discretionary authority to interpret the terms of the Plan and determine a member's eligibility for benefits in accordance with those terms.[7] Both parties agree that the abuse of discretion standard governs the Court's review.[8]

### III.

"[C]laimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corp.*, 215 F.3d 475, 479 (5th Cir. 2000). "This requirement is not one specifically required by ERISA, but has been uniformly imposed by the courts in keeping with Congress' intent in enacting ERISA."

---

[7] R. Doc. No. 50-9, at 62 (United 00362).
[8] *See* R. Doc. No. 50-1, at 3–4; R. Doc. No. 51-1, at 9.

*Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 231 (5th Cir. 1997); *see also Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 33 (5th Cir. 1993) ("[W]e have fully endorsed the prerequisite of exhaustion of administrative remedies in the ERISA context.").

The parties dispute whether Van Bael has exhausted her administrative remedies. The Plan provides, in relevant part:

> If you disagree with either a pre-service request for Benefits determination or post-service claim determination, you can contact us in writing to formally request an appeal. . . . Your first appeal request must be submitted to us within 180 days after you receive the denial of a pre-service request for Benefits or the claim denial.[9]
>
> . . .
>
> If you are not satisfied with the first level appeal decision, you have the right to request a second level appeal. Your second level appeal request must be submitted to us within 60 days from receipt of the first level appeal decision.[10]
>
> . . .
>
> After you exhaust the appeal process, if we make a final determination to deny Benefits, you may choose to participate in our voluntary external review program. You may also choose to participate if we have agreed to waive the requirements of the first and second level appeals process which are described above.[11]

Van Bael admittedly has not filed a second level appeal or requested an external review with respect to any of her claims. Therefore, according to United Healthcare, she has not exhausted her administrative remedies.[12] In response, Van

---

[9] R. Doc. No. 50-8, at 262–63 (United 00262–63).
[10] *Id.* at 264 (United 00264).
[11] *Id.* at 266 (United 00266).
[12] R. Doc. No. 51-1, at 7. United Healthcare relies on the Fifth Circuit's decision in *Denton v. First National Bank of Waco*, 765 F.2d 1295 (5th Cir. 1985). R. Doc. No. 84, at 2. Courts construe *Denton* to provide that plaintiffs must exhaust *all* available

Bael argues that the language in the summary plan description makes clear that both the second level appeal and external review are permissive levels of review and not required for exhaustion purposes.[13]

However, the Court need not decide which levels of review are mandatory under the Plan or whether Van Bael actually exhausted her administrative remedies because the ERISA regulation governing claims procedures provides:

> [I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503–1(*l*)(1). Van Bael argues that United Healthcare has failed to establish or maintain reasonable claims procedures, thereby "extinguish[ing]" the exhaustion requirement.[14]

---

administrative remedies before filing an ERISA action in federal court. *See*, *e.g.*, *Clancy v. Emp'rs Health Ins. Co.*, 82 F. Supp. 2d 589, 599 (E.D. La. 1999) (Clement, J.), *aff'd*, 248 F.3d 1142 (5th Cir. 2001) ("[I]t is clear from *Denton* that, prior to bringing suit in federal court, a plaintiff must exhaust the administrative remedy available under an ERISA plan, even if that remedy is phrased in permissive terms.").

In 2000, the Department of Labor revised the ERISA regulation governing claims procedures. *See* Employee Retirement Income Security Act of 1974; Rules and Regulations for Administration and Enforcement; Claims Procedure, 64 Fed. Reg. 70,245 (Nov. 21, 2000). Under the revised regulation, the exhaustion analysis must consider the number of mandatory appeal levels and whether an appeal level is designated as voluntary. *See* 29 C.F.R. § 2560.503–1(c).

[13] *See* R. Doc. No. 67, at 2.

[14] R. Doc. No. 67, at 6. Subsection (*l*) applies, not only to the plan, but also to United Healthcare as the claims administrator. "Although there is a distinction to be drawn between the plan and its administrator for some purposes, . . . we use the terms interchangeably in this discussion. The quoted language here suggests that

When determining whether an administrator has complied with ERISA's procedural requirements, the Fifth Circuit applies a "substantial compliance" rule:

> ERISA does not require strict compliance with its procedural requirements, mandating only that plan administrators "substantially comply" with the statute and accompanying regulations. *See Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 256–57 (5th Cir. 2005). "Technical noncompliance with ERISA procedures will be excused so long as the purpose of section 1133 has been fulfilled," *Robinson v. Aetna Life Ins.*, 443 F.3d 389, 393 (5th Cir. 2006), which is "to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial," *Wade* [*v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*], 493 F.3d [433,] 539 [(5th Cir. 2007)].

*Baptist Memorial Hospital-DeSoto Inc. v. Crain Auto.*, 392 F. App'x 288, 293 (5th Cir. 2010). Specifically, § 1133 of ERISA provides:

> In accordance with regulations of the Secretary, every employee benefit plan shall—
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. "The ERISA regulations promulgated by the Department of Labor 'provide insight into what constitutes full and fair review.'" *Shedrick v. Marriott Int'l*,

---

subsection (*l*) applies to both the plan and its administrator, if a separate entity, as it requires the plan to establish and follow reasonable claims procedures. Indeed, it is unclear how it could be otherwise as subsection (*l*) would be a dead letter if it did not apply to both the plan and the entity implementing it." *Halo v. Yale Health Plan, Dir. Of Benefits & Record Yale Univ.*, 819 F.3d 42, 50 n.2 (2d Cir. 2016).

*Inc.*, 500 F. App'x 331, 338 (5th Cir. 2012) (quoting *Lafleur v. La. Health Serv. & Indemnity Co.*, 563 F.3d 148, 154 (5th Cir. 2009)).

"In assessing whether the administrator has 'substantially complied' with the applicable procedural requirements, the court must 'consider[ ] all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances.'" *Crain*, 392 F. App'x at 293 (quoting *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 539 (5th Cir. 2007), *abrogated on other grounds*, 560 U.S. 242 (2010)). "Whether the plan administrator substantially complied with the notice requirements is a question of law." *Id.* Guided by this "substantial compliance" framework, the Court must first determine whether United Healthcare failed to establish or follow claims procedures in accordance with § 2560.503–1. If so, then Van Bael may be deemed to have exhausted her administrative remedies.

Van Bael first argues that United failed to establish and maintain a reasonable claims procedure by repeatedly requiring her counsel, Jennifer Martinez ("Martinez"), to submit a designated representative form.[15] According to Van Bael, United required Martinez to submit the form on three separate occasions—"[i]nstead of responding to actual document requests, notices of non-compliances and general status letters."[16]

---

[15] R. Doc. No. 50-1, at 10.
[16] *Id.* at 11–12.

Pursuant to § 2560.503–1(b)(3) and (4), a claims procedure will not be deemed reasonable if it is "administered in a way[ ] that unduly inhibits or hampers the initiation or processing of claims" or it "preclude[s] an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination." However, "a plan may establish reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant." § 2560.503–1(b)(4).

The administrative record reflects the following series of events: On October 20, 2017, Martinez's assistant, Dena Daigle ("Daigle"), sent United Healthcare a letter requesting documents related to "the denial of [Van Bael's] Iovera treatment and Gralise prescription."[17] No claim numbers or dates of service were provided. The letter included two authorization forms—one medical authorization form and one notarized insurance authorization form, both executed by Van Bael.[18] On November 14, 2017, Martinez sent a letter to follow up on her October 20, 2017 letter, claiming that she had not received a response.[19]

On November 21, 2017, United Healthcare responded to Daigle, acknowledging the request for documents sent on Van Bael's behalf.[20] The letter stated, "[P]ursuant to applicable regulations, we require you to submit written authorization from the member authorizing you to receive the member's documents.

---

[17] R. Doc. No. 50-10, at 139 (United 00587).
[18] *Id.* at 141–42 (United 00589–90).
[19] *Id.* at 92 (United 00591).
[20] *Id.* at 148 (United 00596).

The authorization must also sufficiently identify the claim(s) for which you receive authorization. The member authorization form included in your request did not meet the necessary criteria." United Healthcare attached a blank copy of its own "designation of authorized representative" form and noted that "the timeframe within which we will respond to your request will begin with our receipt of the authorization from the patient."[21]

On December 12, 2017, Martinez sent United Healthcare another request for documents.[22] However, this letter does not mention the Gralise prescription. Instead, it references "claims bearing the dates of 8/21/17 and 10/4/17-11/4/17 and regarding services requested" by Dr. Jose Posas ("Dr. Posas"). Martinez did not specify the nature of the services in the letter, but a review of the record reveals that the dates relate to the occipital nerve blocks and cryoneurolysis procedures performed and recommended, respectively, by Dr. Posas.[23] Martinez attached United Healthcare's authorization form, but it was only partially completed.[24] On December 20, 2017,

---

[21] *Id.*; R. Doc. No. 50-11, at 1 (United 00601).
[22] R. Doc. No. 50-11, at 3 (United 00603).
[23] The parties often refer generally to the occipital nerve blocks at issue in Van Bael's appeal. The Court notes that, although the appeal itself appears to pertain only to one occipital nerve block procedure performed on August 21, 2017, the record demonstrates that Van Bael has undergone the procedure at least twice—once with Dr. Kahn and once with Dr. Posas. *See* R. Doc. No. 50-13, at 152 (United 01052); R. Doc. No. 50-14, at 67 (United 01267). Both procedures are mentioned at some point in Martinez's various letters.
[24] R. Doc. No. 50-11, at 6 (United 00606). The form requires the member to state his or her representative's name and then designate that person "to act as my authorized representative in requesting" a complaint, an appeal, and/or documents. The form instructs the member to check each of the items that apply (complaint, appeal, and/or documents), but Van Bael did not check any of the items.

United Healthcare sent Martinez another letter reiterating its criterion that the form specify the claim or claims for which the representative has received authorization.[25]

On January 2, 2018, Martinez sent United Healthcare a letter styled "Second Request for Documents/Claim Files."[26] The letter referenced two claim numbers and included exhibits, but there was no attached completed authorization form—despite United Healthcare's December 20th letter and the incomplete form that was submitted on December 12th. Based on two explanations of benefits attached to the letter, the claim numbers refer to a service performed by Dr. Khan on January 18, 2017 and two services performed by Dr. Posas on August 21, 2017.[27]

On January 16, 2018, United Healthcare sent a letter to Dr. Khan—not Martinez: "Attached is a copy of a letter sent to Sunshine Van Bael regarding your document requests."[28] The letter to Van Bael, dated the same day, includes attachments represented by United Healthcare, in its letter, to be "the information UnitedHealthcare used in making the determination."[29] It refers to only one claim, although it attaches what United Healthcare calls an "appeal letter" from Martinez,

---

[25] *Id.* at 9 (United 00609). Bael argues that, as of December 20th, United Healthcare had "all information required by the form in its possession." R. Doc. No. 50-1, at 11. However, Martinez's letters sent before that date referenced different claims and service dates and included a hodge-podge of various forms, some of which were incomplete.

[26] R. Doc. No. 50-9, at 131 (United 00431).

[27] *Id.* at 134 (United 00434), 142 (United 00442).

[28] *Id.* at 87 (United 00387).

[29] *Id.* at 88 (United 00388).

dated January 2, 2018 (the letter Martinez sent on that date requesting documents with respect to two claims).[30]

On March 2, 2018, Martinez faxed United Healthcare a 33-page appeal letter that referenced all three claim denials (the "appeal").[31] The only claim number listed is associated with an occipital nerve block procedure, and the claim number relates to the procedure performed on August 21, 2018 by Dr. Posas. The appeal letter included an extensive number of attachments (over 700 pages)—but no completed authorization form.

On March 5, 2018, United Healthcare sent a letter to Martinez's firm: "State and federal regulations require written authorization from the patient for you to submit an appeal or request on their behalf. Because your request didn't include a complete authorization, we can't process it at this time. Once you send us a current authorization meeting the following requirements, we will work on your request."[32] The letter then lists the requirements, which the Court notes were not all met by the initial authorization form that Martinez sent in October 2017.[33]

---

[30] *Id.* at 131 (United 00431).

[31] R. Doc. No. 50-10, at 78–110 (United 00526–58).

[32] R. Doc. No. 50-12, at 1 (United 00751).

[33] For example, the authorization must include the "[n]ame of the provider/practice group from which the services were/will be rendered" and an "indication that authorization is in connection to services rendered from named provider/practice group and/or request for documents." R. Doc. No. 50-12, at 1 (United 00751). Neither Martinez's October 20, 2017 letter nor its attached authorization forms include such information.

On March 12, 2018, Martinez sent United Healthcare a letter with United Healthcare's authorization form, which was executed by Van Bael.[34] Based on the Court's review of the record and the requirements listed in United Healthcare's March 5th letter, this is the first time that Martinez submitted an authorization form that fully complied with United Healthcare's policy.

Finally, on March 30, 2018, United Healthcare issued its ruling (the "ruling") on Van Bael's appeal. According to United Healthcare, the record reveals that any delays in the appeal process were created by Van Bael's "own failures to fully complete the form and provide the completed form with each correspondence."[35] Alternatively, it argues that its requests for a properly executed designated representative form constitute substantial compliance:[36] because Van Bael states in her motion for summary judgment that she was able to timely appeal each of her denied claims,[37] United Healthcare contends that she was not denied a full and fair review as a result of having to execute the form multiple times.

While the Court rejects United Healthcare's argument that Martinez should have simply submitted an executed form with every letter she sent, the record shows that Van Bael did not submit a written authorization form that fully complied with United Healthcare's requirements until March 12, 2018—almost three months after

---

[34] R. Doc. No. 50-12, at 3 (United 00753).
[35] R. Doc. No. 68, at 4.
[36] R. Doc. No. 84, at 3.
[37] *Id.* at 3; *see also* R. Doc. No. 50-1, at 9.

she began requesting documents.[38] Furthermore, even if Martinez had submitted a complete authorization form from the beginning, her document requests were unclear. The first request references the cryoneurolysis procedure and the Gralise prescription. The second request references two unspecified procedures on two different dates of service—which appear to correspond to the cryoneurolysis and occipital nerve block procedures recommended and performed by Dr. Posas. The third letter includes a different set of dates which correspond to two procedures, one performed by Dr. Khan and one by Dr. Posas. Even assuming United Healthcare did not fully comply with § 2560.503–1, the Court finds that significant fault lies with Martinez and her communications such that this argument will not excuse Van Bael's responsibility to exhaust her administrative remedies.[39]

---

[38] At one point in its opposition to Van Bael's motion for summary judgment, United Healthcare states that Van Bael did not submit a "complete" authorization form until December 12, 2017. R. Doc. No. 68, at 5. However, on the previous page, United Healthcare argues that Van Bael did not fully complete the form submitted on that date. *Id.* at 4. Despite this inconsistency, the Court's review of the form submitted on December 12th shows that it was, indeed, incomplete, and that a valid form was not submitted until March 12, 2018.

[39] In a supplemental brief filed after United Healthcare responded to limited discovery requests, as ordered by the United States Magistrate Judge, Van Bael submitted evidence of United Healthcare's policy on authorization forms, arguing that the forms she submitted in her first request for documents on October 20, 2017 clearly complied with the policy. R. Doc. No. 92, at 3. The Court disagrees. First, the portion of the policy that Van Bael references requires that the "[a]uthorization is in conjunction with appeal(s) and/or requests for documents." R. Doc. No. 92-1, at 22. The form submitted with the October 20th letter states only that United Healthcare was authorized to disclose information for treatment dates from "initial claim to present," without reference to particular dates, let alone any particular claim. R. Doc. No. 50-10, at 141 (United 00589). Furthermore, the policy states that, to determine if an authorization is valid, the United Healthcare employee must use the "Designation of Authorized Representative Decision Tree," but no decision tree has been presented to the Court. R. Doc. No. 92-1, at 15.

14

Van Bael also argues that United Healthcare failed to maintain reasonable claims procedures by not responding to Martinez's communications and not producing requested documents in accordance with ERISA.[40] Although Martinez sent several requests for documents, as the Court has already explained, several of the requests were deficient because they did not include the requisite authorization. Moreover, the requests referenced a variety of combinations of claims. Despite Van Bael's contentions, this is not a case where a representative repeatedly sent identical requests with sufficient authorization from the relevant member and the administrator simply failed to respond. Rather, this appears to be a case of poor communication on the part of both parties.

However, the communications between Martinez and United Healthcare, reviewed as a whole, reveal a host of issues attributable solely to United Healthcare. The Fifth Circuit excuses instances of an administrator's technical noncompliance when the communications between the administrator and the claimant nonetheless "constitute[ ] a meaningful dialogue." *Wade*, 439 F.3d at 540; *see also Lafleur*, 563 F.3d at 154 ("Substantial compliance requires 'meaningful dialogue' between the beneficiary and the administrator.") (citation omitted). The record reflects that United Healthcare's correspondence was at best unexplainable and at worst a stonewalling of Van Bael's attempts to seek information and pursue an appeal.

United Healthcare's response to Martinez's documents requests was not only non-responsive, at least in part, but it was confusing. It appears from the record that

---

[40] R. Doc. No. 50-1, at 13, 15.

United Healthcare simply failed to respond to Martinez's initial October 20, 2017 letter. Then, despite United Healthcare's repeated assertions that Martinez had not yet submitted proper authorization, it nonetheless sent Van Bael documents on January 16, 2018 in response to Martinez's January 2, 2018 request. The January 2nd request—which is included as an attachment to United Healthcare's letter—references claims for services provided on January 18, 2017 and August 21, 2017. But United Healthcare's purported response only references the January 2017 claim.

Additionally, United Healthcare's letter does not acknowledge Martinez's specific document requests, which included requests for a specific policy (with the name and number of the policy provided); a copy of the claim files related to the January and August 2017 claims; and a certified copy of the Plan. Instead, United Healthcare's response merely states that it was providing Van Bael with the information that it used to make an unspecified determination—presumably regarding the January 2017 claim.

United Healthcare was not required to produce any and all requested documents. ERISA regulations require only that a claimant be "provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." § 2560.503–1(h)(2)(iii). A document, record, or information is considered relevant if: (1) it was relied on when the benefit determination was made; (2) it was submitted, considered, or generated in the course of that determination, without regard to whether it was relied upon; (3) it demonstrates compliance with administrative processes and

safeguards designed to ensure and verify that determinations are made in accordance with plan documents and that the plan provisions are consistently applied; and (4) it constitutes a policy or guidance statement with respect to the plan concerning the denied service, without regard to whether it was relied upon. § 2560.503–1(m)(8). United Healthcare's response to the documents request—which included a fraction of the summary plan description, an explanation of benefits for only one of the two claims referenced in the request, one claim image, and the request itself—cannot be said to have complied with § 2560.503–1(h)(2)(iii).

The January 2017 service referenced in United Healthcare's letter as the relevant claim was for occipital nerve blocks performed by Dr. Kahn. The pertinent explanation of benefits provides that coverage was denied because "your plan only covers proven procedures. This service is unproven for the diagnosis or procedure code billed." Other than the explanation of benefits, the claim image, and Martinez's request for documents (which the letter characterizes as an "appeal letter," inaccurately so), the only substantive documents attached to the letter—which United Healthcare states were "used in making the determination"—are 29 pages of the 171-page summary plan description. Incredulously, the portion of the summary plan description that United Healthcare sent Van Bael is not the portion that includes an explanation of what constitutes a proven procedure—the crux of the

17

reason for United Healthcare's denial of her claim for coverage of the January 2017 procedure.[41]

In addition to the fact that the puzzling response to Martinez's January 2nd letter was the only time United Healthcare answered Van Bael's requests for information, the response was sent to Dr. Khan instead of Martinez. Van Bael contends that Dr. Khan never made any requests for documents, and the record is devoid of any such communication.[42] On the same date, it appears that United Healthcare made a similar mistake when it sent correspondence to Dr. Posas, purportedly in response to a request for documents, although Van Bael contends (and the record supports the fact) that Dr. Posas never made a documents request.[43]

United Healthcare's response to Martinez's documents requests is not the only example of cryptic communication on the part of the claims administrator. After the appeal was submitted, United Healthcare sent Van Bael several confusing letters. Martinez's March 2nd letter petitioned for an appeal of denial for coverage of three services: (1) the cryoneurolysis procedure recommended by Dr. Posas, (2) the occipital nerve blocks performed by Dr. Posas; and (3) Van Bael's prescription for Gralise.[44] On March 6, 2018, United Healthcare sent Van Bael a letter acknowledging receipt

---

[41] Van Bael requests that the Court impose penalties on United Healthcare for its failure to produce documents pursuant to 29 U.S.C. § 1132(c)(1)(B). R. Doc. No. 50-1, at 14. However, as United Healthcare correctly notes, the Court dismissed with prejudice Van Bael's claims against United Healthcare for penalties under ERISA pursuant to the parties' agreement. R. Doc. No. 20; *see also* R. Doc. No. 13. The Court will, therefore, deny Van Bael's request for penalties.

[42] R. Doc. No. 50-1, at 13–14.

[43] *See* R. Doc. No. 50-10, at 39 (United 00487); R. Doc. No. 50-1, at 16.

[44] R. Doc. No. 50-10, at 79 (United 00527).

of a request related to a March 15, 2017 date of service; the Court cannot find evidence of any such request in the record.[45] On March 26, 2018, United Healthcare sent a letter—this time to Martinez—indicating that a request related to a service provided by Dr. Posas in August 2017 was already reviewed: "Since this is a duplicate we will not process this as an appeal."[46] Yet on March 30, 2018, United Healthcare issued its ruling on the appeal with direct reference to the August 2017 service and a four-page explanation of its ruling.[47]

Finally, United Healthcare's notification of its ruling on Van Bael's appeal is insufficient to demonstrate that she received a full and fair review of her claims. The appeal took issue with three separate denials for coverage. Yet, the ruling begins by stating, "We reviewed the appeal regarding coverage of the services that you received from Jose Posas, MD."[48] It makes no mention of Gralise or the dates of service for which the cryoneurolysis procedure was scheduled. United Healthcare now argues that Van Bael's appeal did not include information about a recent denial of coverage for Gralise.[49] Whether or not that is true, United Healthcare did not communicate that to Van Bael until now.

Additionally, the ruling did not address the denial of coverage for cryoneurolysis. United Healthcare contends that its March 30th letter addresses both

---

[45] R. Doc. No. 50-15, at 148 (United 01648).
[46] R. Doc. No. 50-10, at 117 (United 00565).
[47] *Id.* at 128–33 (United 00576–81).
[48] *Id.* at 128 (United 00576).
[49] R. Doc. No. 51-1, at 10.

the occipital nerve block and the cryoneurolysis procedures.[50] However, the caption of the letter only references an August 21, 2017 date of service (when an occipital nerve block was performed by Dr. Posas).[51] In fact, the letter states that the appeal was reviewed by United Healthcare's medical director, who wrote, "You had an injection . . . into the nerve at the base of your skull. . . . This was done on August 21, 2017. We have looked at your doctor's notes. We looked at your plan medical policy. This treatment has not been shown to be effective for your condition."[52] The letter is silent as to cryoneurolysis, despite United Healthcare's assertion otherwise.

If, indeed, the letter was intended to address Van Bael's appeal of denial for coverage of the cryoneurolysis procedure, then it is woefully insufficient. "To ensure the full and fair review contemplated by ERISA, the specific reason or reasons for denial must be clearly identified at the administrative level in order to give the parties an opportunity for meaningful dialogue." *Lafleur*, 563 F.3d at 155–56. Assuming the letter includes a ruling on the cryoneurolysis claim, the reason for upholding United Healthcare's denial for coverage of the procedure is indistinguishable from the reason for upholding its denial for coverage of the occipital nerve block procedure.

Not only is United Healthcare's ruling incomplete, but it appears to contain inaccurate information. For example, the letter provides, "You had an injection of

---

[50] R. Doc. No. 84, at 4.
[51] R. Doc. No. 50-10, at 128 (United 00576).
[52] *Id.* at 129 (United 00577).

steroid medicine and local anesthetic into the nerve at the base of your skull."[53] Van Bael argues that this is incorrect as evidenced by Dr. Posas's notes, which United Healthcare's medical director claims to have examined in connection with the medical director's review. Dr. Posas's notes from the day of Van Bael's follow-up appointment state, "[Her] condition has improved significantly . . . . We have discussed that this is a significant result given the fact that we avoided the steroid in the injection."[54] United Healthcare has offered no explanation or clarification on this apparent discrepancy.

Although the substantial compliance standard excuses *de minimis* violations of ERISA regulations, *Robinson*, 443 F.3d at 394, it cannot be used to frustrate the statute's purpose. A review of United Healthcare's notification of its ruling on Van Bael's appeal reveals that she was not provided a meaningful dialogue or a meaningful review of all of her claims. The Court cannot determine whether United Healthcare's ruling was an abuse of discretion if it does not provide a proper explanation for the ruling. The Court concludes that United Healthcare failed to follow claims procedures consistent with § 2560.503–1 and, to the extent that Van Bael has not exhausted her administrative remedies, the Court excuses her from doing so.[55]

---

[53] *Id.* at 129 (United 00577).
[54] R. Doc. No. 50-14, at 69 (United 01269).
[55] The parties also argue about the timeliness of United Healthcare's ruling, but they did not properly brief the issue. Furthermore, the Court has already concluded that Van Bael may be deemed to have exhausted her administrative remedies. Whether the ruling was timely would not affect that conclusion.

## IV.

In the memorandum in support of Van Bael's motion for summary judgment, all of her legal arguments fall under the heading "[United Healthcare] Failed to Establish or Maintain a Reasonable Claims Procedure as Required by ERISA." Despite the structure of the memorandum, the Court will not allow Van Bael to characterize all of her arguments as procedural. Her final three arguments—that United Healthcare failed to provide her a full and fair review of its denial of her request for coverage of (1) the occipital nerve blocks, (2) the cryoneurolysis procedure, and (3) the Gralise prescription—are not arguments that United Healthcare violated ERISA procedures.[56] In fact, Van Bael never cites to any case law or regulations pertaining to the relevant claims procedures.

Instead, she argues that, under both ERISA and the Plan, United Healthcare's denials were wrong. For example, Van Bael argues that there is no evidence in the administrative record to support United Healthcare's decision to deny coverage for the occipital nerve block procedure.[57] She asserts that, under a plain reading of the Plan, occipital nerve blocks are a proven procedure supported by scientific evidence (and, thus, should be covered).[58] Her final arguments are properly characterized as substantive challenges to the denial of her benefits claims as an abuse of discretion.

---

[56] Any procedural arguments embedded therein are addressed in Part III of this order.

[57] R. Doc. No. 50-1, at 23.

[58] R. Doc. No. 50-1, at 21–22.

Because the Court has considered all of Van Bael's procedural arguments and concluded that United Healthcare has failed to comply with ERISA's procedural requirements, it is not in a position to evaluate whether United Healthcare's decisions were an abuse of discretion. The Fifth Circuit looks "favorably upon decisions that require 'knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.'" *Id.* at 154. As a result, "[r]emand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with the procedural requirements of ERISA." *Id.* at 157.

Van Bael argues that remand is not the appropriate remedy here—that she is entitled to a substantive benefits determination by the Court.[59] However, "procedural violations of ERISA generally do not give rise to a substantive damages remedy." *Lafleur*, 563 F.3d at 157. "[R]emand for further action is unnecessary only if the evidence clearly shows that the administrator's actions were arbitrary and capricious, or the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground." *Id.* at 158 (quoting *Caldwell v. Life*

---

[59] R. Doc. No. 67, at 11. Indeed, in the sixteen pages of her motion that make up these final three arguments regarding the wrongfulness of the denials at issue, Van Bael cites to only one case—specifically, the section of that case interpreting the relevant plan provisions. *See Toman v. Goldman, Sachs & Co. Med. Plan*, No. 02-1184, 2004 WL 988983, at *5–6 (D. Utah Apr. 8, 2004).

*Ins. Co. of N. Am.*, 287 F.3d 1276, 1289 (10th Cir. 2002)).[60] "This exception to the remand rule applies 'where the record establishes that the plan administrator's denial of the claim was an abuse of discretion as a matter of law.'" *Id.* (quoting *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 250 (4th Cir. 2008)). But "[i]f the administrative record reflects, at minimum, a colorable claim for upholding the denial of benefits, remand is usually the appropriate remedy." *Id.*

Based on a thorough review of the administrative record and the parties' briefs, the Court "do[es] not believe that [Van Bael] is entitled to judgment as a matter of law." *Id.*; *see also McCusker v. Unum Life Ins. Co. of Am.*, No. 17-1214, 2018 WL 3844828, at *10 (E.D. La. Aug. 13, 2018) (Feldman, J.) (finding remand appropriate because "the plaintiff fail[ed] to persuade the Court that the administrator's actions were arbitrary or capricious, or that it would have been unreasonable for the administrator to deny the plaintiff's claim on any ground"); *Richardson v. Metropolitan Life Ins. Co.*, No. 12-2802, 2014 WL 1050758, at *11 (E.D. La. Mar. 14, 2014) (Vance, J.) (remanding to the administrator because "it is not clear that the administrator's actions were arbitrary and capricious or that it would have been unreasonable for the administrator to deny plaintiff's claim on any ground").

---

[60] "A denial is arbitrary and capricious in the ERISA context when it is not supported by concrete evidence in the record." *Rossi v. Precision Drilling Oilfield Servs. Corp. Emp. Benefits Plan*, 704 F.3d 362, 368 (5th Cir. 2013).

**V.**

Accordingly,

**IT IS ORDERED** that Sunshine Van Bael's motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that United Healthcare Services, Inc.'s motion for summary judgment, including its request for attorneys' fees and costs, is **DENIED.**

**IT IS FURTHER ORDERED** that Sunshine Van Bael's benefit claims are **REMANDED** to United Healthcare for further administrative review consistent with this opinion and an administrative decision on or before **MAY 8, 2019.**

**IT IS FURTHER ORDERED** that the pending motion[61] *in limine* is **DISMISSED.**

New Orleans, Louisiana, January 8, 2019.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[61] R. Doc. No. 77.